IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DANNY T. WILKERSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:16-cv-851-BN |
| | § | |
| NANCY A. BERRYHILL, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Danny T. Wilkerson seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons explained below, the hearing decision is remanded.

### Background

Wilkerson alleges that he is disabled due to a variety of ailments, including "fibromyalgia and chronic fatigue syndrome, among other things." Dkt. No. 16 at 6. After his application for supplemental security income ("SSI") benefits was denied initially and on reconsideration, he requested a hearing before an administrative law judge ("ALJ"). That hearing was held on September 24, 2014. At the time of the hearing, he was 50 years old. He is a high school graduate and does not have past relevant work as that term is defined in the Commissioner's regulations. He has not engaged in substantial gainful activity since October 9, 2012.

The ALJ found that Wilkerson was not disabled and therefore not entitled to SSI benefits. Although the medical evidence established that he suffered from fibromyalgia, chronic fatigue syndrome, major depressive disorder, panic disorder, anxiety, and social phobia, among other conditions, the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. The ALJ further determined that he "ha[d] the residual functional capacity to sit up to six hours and stand up to six hours in an eight-hour day, ... to lift ten pounds frequently and twenty pounds occasionally, occasionally climb, balance, bend, stoop, kneel, crouch, and crawl, ... [and] occasionally interact with the general public, and with supervisors and coworkers." Administrative Record [Dkt. No. 12] ("Tr") at 25.

Relying on a vocational expert's testimony, the ALJ found that Wilkerson was capable of working as a photocopy operator, housekeeper, and routing clerk – jobs that exist in significant numbers in the national economy. Given his age, education, and exertional capacity for light work, the ALJ determined that he was not disabled under the Medical-Vocational Guidelines.

Wilkerson appealed that decision to the Appeals Council. The Council affirmed.

He then filed this action in federal district court. He challenges the hearing decision on three general grounds: (1) the ALJ improperly rejected the opinion of his treating physician, Dr. Deno Barroga; (2) the ALJ improperly rejected the opinion of an examining psychologist, Dr. Julie Duncan, PhD; and (3) substantial evidence does

2

not support the ALJ's findings with respect to Wilkerson's residual functional capacity ("RFC").

The Court determines that the hearing decision must be reversed and this case remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

## Legal Standards

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923. The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm

only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)); 20 C.F.R. §§ 404.1527(c), 416.927(c). A disabled worker is entitled to monthly social security benefits if certain conditions are met. *See* 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

"In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007).

The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *See Copeland*, 771 F.3d at 923; *Audler*, 501 F.3d at 448. A finding that the

claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show

that he could and would have adduced evidence that might have altered the result."

*Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

I.     The ALJ erred when assigning Dr. Barroga's opinion limited weight.

Wilkerson first contends that the ALJ erred by "essentially reject[ing] the opinion of [his] treating physician," Dr. Barroga. Dkt. No. 16 at 16; *see* Tr. at 26 ("The undersigned gives little weight to [Dr. Barroga's] assessment."). Wilkerson specifically argues that the ALJ erred by rejecting his treating physician's opinion without conducting the detailed analysis 20 C.F.R. § 416.927(c) requires and without good cause. The Court agrees.

A.     The ALJ is required to consider the Section 426.927(c) factors in this case.

In *Newton v. Apfel*, the United State Court of Appeals for the Fifth Circuit found that "an ALJ is required to consider each of the § [416.927(c)] factors before declining to give any weight to the opinions of the claimant's treating specialist." *See* 209 F.3d 448, 456 (5th Cir. 2000) (making this point in the context of 20 C.F.R. § 404.1527(c), an equivalent to 20 C.F.R. § 416.927(c)). These factors include: "(1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician." *Id.*; 20 C.F.R. § 416.927(c). The Court of Appeals has since explained that "[t]he *Newton* court

limited its holdings to cases where the ALJ rejects the sole relevant medical opinion before it." *Qualls v. Astrue*, 339 F. App'x 461, 467 (5th Cir. 2009). As a result, when there are competing opinions of treating or examining physicians, the ALJ does not need to consider each Section 416.927(c) factor when declining to defer to the treating physician's opinion. *See id.* at 465.

The Commissioner argues that "the ALJ had no duty to evaluate Dr. Barroga's opinion using the factors in 20 C.F.R. § 416.927(c)" because "there is competing-first hand medical evidence and the ALJ finds as a factual matter that one doctors opinion is more well-founded than another." Dkt. No. 17 at 18 (quoting *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000)).

The Commissioner is correct that an ALJ is not required to conduct a Section 416.927(c) analysis before rejecting a treating physician's opinion in the "'absen[ce] [of] reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist.'" *Qualls*, 339 F. App'x at 466 (quoting *Newton*, 209 F.3d at 453)). But that is not the case here.

The ALJ declined to defer to Dr. Barroga's conclusions because they are purportedly not supported by "objective medical evidence." Tr. at 23, 27-28. The ALJ specifically cites to x-ray results and observations in Drs. Rakiya Diallo, Yasmin Khan, and Jamie Williamson's respective examination notes suggesting that Wilkerson's symptoms were fairly minimal. *See id.* at 29. The ALJ also cites Drs. Frederick Cremona and Laurence Ligon's respective State Agency Consultant Reports, to which he assigned substantial weight. The ALJ found that these reports indicate that

7

Wilkerson's allegations were not fully consistent with the objective medical evidence and that Wilkerson could perform light work activity.

None of the evidence the ALJ cites in his decision allows him to bypass a Section 416.927(c) analysis before assigning Dr. Barroga's opinion limited weight. The Fifth Circuit only allows an ALJ to bypass this analysis when he or she points to a "competing opinion" of an "examining physician." *Qualls*, 339 F. App'x at 467. Drs. Khan, Diallo, and Williamson tracked Plaintiff's symptoms at particular moments in time. They were not "called upon to explain how Wilkerson's fibromyalgia affected his work-related limitations." Dkt. No. 18 at 5. They consequently cannot be said to have provided a competing opinion. As this Court has noted, "[m]edical notes that do not give an opinion on Plaintiff's physical limitations in the workplace or what activities [he] would be able to perform do not controvert the opinion of Plaintiff's treating physician." *Anderson v. Colvin*, No. 3:15-cv-781-BN, 2016 WL 299019, at *6 (N.D. Tex. Jan. 25, 2016) (citing *Jackson v. Astrue*, No. 4:10-cv-150-Y, 2011 WL 816850, at *9 (N.D. Tex. Feb. 15, 2011)).

The ALJ also cites to Drs. Cremona and Ligon's respective State Agency Consultant Reports, in which they conclude that Plaintiff could perform light work. But neither actually examined Wilkerson. As such, the ALJ's decision to defer to them in place of the treating physician is not supported by substantial evidence. *See Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) (citing *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988), and *Strickland v. Harris*, 615 F.2d 1103, 1109-10 (5th Cir. 1980), to

explain that an ALJ may not solely rely on the reports of non-examining physicians when the non-examining physician's conclusions "either contradict or are unsupported by findings made by an examining physician").

The ALJ was therefore required to conduct the detailed analysis Section 416.927(c) requires before rejecting Dr. Barroga's conclusions.

B.    The ALJ did not consider the Section 416.927(c) factors in this case.

The Commissioner appears to argue that the ALJ considered the Section 416.927(c) factors even if he did not explicitly purport to do so. *See* Dkt. No. 17 at 18 (noting that the ALJ considered that Dr. Barroga was treating Plaintiff for fibromyalgia, and thereby, necessarily considered the "treating and nature of treatment factors"). Courts in this district do not always require the ALJ to discuss each of the Section 416.927(c) factors "if it is clear that the ALJ has nevertheless considered the factors and the ALJ's decision to afford limited weight to the treating physician constitutes 'good cause.'" *Gerkn v. Colvin*, No. 3:13-cv-1586-BN, 2014 WL 840039, at *6 (N.D. Tex. March 4, 2014) (citing *Brock v. Astrue*, No. 3:10-cv-1399-BD, 2011 WL 4348305, at *4 (N.D. Tex. Sept. 16, 2011)).

The ALJ does not appear to have considered all of the Section 416.927(c) factors in this case. The ALJ discussed select pieces of evidence in some of Dr. Barroga's examinations of Wilkerson. He also explains why Dr. Barroga's findings at these examinations are not entirely supported by the record. The Court agrees that, by so doing, the ALJ might have considered the nature of Barroga's relationship with Wilkerson (Factor No. 3), the support for Dr. Barroga's opinion afforded by the medical

9

evidence of record (Factor No. 4), and the consistency of the opinion with the record as a whole (Factor No. 5) – at least in part.

It does not follow that the ALJ considered the length of time in which Dr. Barroga treated Wilkerson (Factor No. 1), the frequency with which Dr. Barroga treated Wilkerson (Factor No. 2), the full nature and extent of Dr. Barroga's relationship with Wilkerson since he started treating him in 2005 (Factor No. 3), or Dr. Zahabi's specialty in rheumatology (Factor No. 6). The ALJ does not at all discuss when Dr. Barroga first treated Wilkerson (2005) or last treated Wilkerson (2015), how often Wilkerson specifically received treatment from Dr. Barroga, or whether Dr. Zahabi's specialty in rheumatology might inform his conclusions about a long-term patient suffering from an illness "that often lacks objective clinical findings." *Bragg v. Comm'r of Soc. Security Admin.*, 567 F. Supp. 2d 893, 912 (N.D. Tex. 2008) (citing *Welch v. Unum Life Ins. Co. of Am.*, 382 F.3d 1078, 1087 (10th Cir. 2004), among other cases). In the absence of sufficient evidence in the ALJ's decision that he discussed each of these factors, the Court cannot simply presume that he did so. Courts "may affirm only on the grounds the Commissioner stated for [the] decision." *Purdhomme v. Colvin*, 605 F. App'x 250, 254 (5th Cir. 2015) (citing *Copeland*, 771 F.3d at 923).

C.    The ALJ's decision to reject Dr. Barroga's opinion is not supported by <u>substantial evidence.</u>

But it ultimately does not matter whether the ALJ considered the Section 416.927(c) factors in this case. The ALJ's decision to assign limited weight to Dr.

10

Barroga's opinions is not substantially supported by the evidence. The ALJ has consequently acted without good cause.

In *Bragg*, another judge in this District explained that, "[w]hen a claimant has an accepted diagnosis, such as fibromyalgia, that often lacks objective clinical findings, an allegation of an absence of objective clinical findings does not alone constitute good cause to reject opinions of treating physicians. To show good cause under the circumstances, the ALJ's decision must do more than merely state that the opinions 'are not supported by any objective clinical findings.'" 567 F. Supp. 2d at 911. "[F]ibromyaliga is an illness with only subjective symptoms." *Campbell v. Astrue*, No. SA CV 7-864-PLA, 2008 WL 4792672, at *10 (C.D. Cal. Oct. 29, 2008) (citing *Sarchet v. Chater*, 78 F.3d 305, 306-07 (7th Cir. 1996)). As such, an absence of objective clinical findings may be entirely consistent with the treating physician's conclusions. And the ALJ repeatedly explained that he rejected Dr. Barroga's conclusions precisely because they were not supported by the "objective medical evidence." *See* Tr. at 23, 27-28.

The Commissioner argues that this case is distinct from *Bragg* because, in that case, the ALJ failed to "fully consider[] the opinions of all of [the claimant's] treating and examining physicians." Dkt. No. 17 at 16. The ALJ may have recited some facts from the physicians in the record. But the ALJ often failed to cite or otherwise discuss the portions of physician opinions that contradict his conclusions. For instance, as discussed in greater detail below, the ALJ failed to discuss an examining physician's

findings that Wilkerson would have difficulty concentrating, interacting with others, and coping with normal work pressures, among other curious omissions.

The Commissioner also contends that "[t]he ALJ in the instant case did more by reciting the medical opinions by several other treating and examining physicians that contradicted Dr. Barroga's conclusions." Dkt. No. 17 at 15. But, as Wilkerson correctly notes, "the 'other evidence' the ALJ relied on was nothing more than an absence of clinical findings noted by other physicians." Dkt. No. 18 at 4. This includes select observations that "Plaintiff had diffuse tenderness but normal range of motion in the extremities, normal strength, normal reflexes, and normal coordination, with no cranial nerve or sensory deficit (Tr. 26, 229)," and "no musculoskeletal or psychiatric abnormality (Tr. 26, 235)." Dkt. No. 17 at 15.

These observations might not allow the ALJ to reject Dr. Barroga's findings even if Wilkerson only suffered from conditions that, unlike fibromyalgia, can be tracked by objective clinical findings. These physicians "d[id] not give an opinion on [Wilkerson's] physical limitations in the workplace or what activities [he] would be able to perform." *Anderson*, 2016 WL 299019, at *6. And so they "do not controvert the opinion of [Wilkerson's] treating physician." *Id*. "An [ALJ] may not arbitrarily reject uncontroverted medical testimony." *Strickland*, 615 F.2d at 1110.

D.   <u>The ALJ's failure to properly consider Dr. Barroga's opinion is material</u>.

"[F]ailure to adhere to the procedures proscribed by the Social Security regulations is generally sufficient grounds for reversal and remand of an administrative decision." *Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 515 (S.D. Tex.

12

2003) (citing *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987)). But a failure does not necessarily dictate a remand for further review. The Court will affirm a decision if the ALJ's error is harmless and remand if the plaintiff was prejudiced due to the error. *See id.* A plaintiff establishes prejudice by showing that the ALJ could have reached a different outcome but for the error in question. *Newton*, 209 F.3d at 458.

The ALJ could have reached a different outcome here. The ALJ determined Wilkerson's RFC without regard to Dr. Barroga's conclusions. As the ALJ acknowledges, Dr. Barroga's conclusions suggest that Wilkerson's functional limitations are "debilitating." Tr. at 27. Dr. Barroga specifically concluded that Wilkerson could only sit and stand for two hours or so in an eight-hour work day, was incapable of handling the stress associated with even a low stress job, and would be absent more than four days a month, among other findings. *See id.* at 27-28. During the administrative hearing, the ALJ prohibited Wilkerson's counsel from asking the vocational expert to consider the "limitations that [Dr. Barroga] had pointed out." *Id.* at 52. The ALJ reasoned that these observations "call[] for less than full-time work." *Id.* at 53. He also suggested that, if he found Dr. Barroga's opinion to be credible, he would find Wilkerson to be disabled, "regardless of what the vocational expert would state." *Id.*

The ALJ's error might have impacted his determination on Wilkerson's RFC, which, "in turn, would likely have affected the jobs available at step five of the

sequential evaluation process." *Kneeland v. Berryhill*, __ F.3d __, No. 15-30880, 2017 WL 927781, at *1 (5th Cir. March 8, 2017).

The ALJ failed to properly weigh Dr. Barroga's opinion and Wilkerson was harmed by that error.

II.     The ALJ erred by not explaining the extent to which he accepted Dr. Julie Duncan's conclusions and his rationale for so doing.

Wilkerson next challenges the ALJ's purported decision to assign Dr. Duncan's conclusions concerning Wilkerson's work-related limitations no weight. The Commissioner counters that the ALJ acted properly in so doing. In other words, both parties appear to presume that the ALJ considered Dr. Duncan's conclusions concerning Wilkerson's work-related limitations and rejected them.

The Court does not agree with this presumption. It is not clear whether the ALJ assigned any weight to Dr. Duncan's conclusions concerning Wilkerson's work limitations. He, in fact, never purported to assign Dr. Duncan's conclusions any weight. Instead, the ALJ appears to have selectively cited Dr. Duncan's report to the extent it supports his conclusion, summarily dismissed other sections of her report concerning Wilkerson's inability to function at home because they are purportedly only based on Wilkerson's self-reports, and then ignored Dr. Duncan's conclusions that Wilkerson would have difficulties relating to concentration, pace, social interaction, and coping with the normal pressures of work. The ALJ's failure to discuss Dr. Duncan's findings concerning Wilkerson's work-related limitations could mean that he implicitly rejected those specific findings. But it could also mean that he failed to consider them at all.

14

Regardless, the ALJ's failure to discuss Dr. Duncan's conclusions concerning Wilkerson's work limitations is an error of law in and of itself. *See Kneeland*, 2017 WL 927781, at *8 (finding the ALJ's "root error" to be "failing to address – or even mention – Dr. Bernauer's opinion his decision"). If the ALJ did not consider Dr. Duncan's conclusions, "remand is appropriate for consideration of [these] conclusion[s]." *id.* at *10. And if the ALJ implicitly "assigned [them] no weight, ... remand is appropriate for an explanation of the rejected medical [findings], or an explanation of what weight was assigned." *Id.* "[T]he ALJ cannot [simply] reject a medical opinion without an explanation.'" *Id.* at *8. The ALJ has an obligation to evaluate every medical opinion he or she receives, 20 C.F.R. § 416.927(c), and to fully and fairly develop the entire record, *see Copeland*, 771 F.3d at 923. The ALJ "cannot 'pick and choose' only the evidence that supports his position." *Loza v. Apfel*, 219 F.3d 378, 383 (5th Cir. 2000) (citing *Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984), among other cases).

The Commissioner argues that any error in not addressing Dr. Duncan's conclusions should be deemed harmless. She contends that Dr. Duncan's conclusions are incorporated in the RFC assessment. As she notes, the RFC assessment accounts for "Plaintiff's mild difficulties in social functioning and concentration, persistence, or pace." Dkt. No. 17 at 21.

But, by failing to explicitly address Dr. Duncan's conclusions, "it [is] impossible to know whether the ALJ properly considered and weighed [her findings]" in

determining Plaintiff only faced "mild" limitations in these areas. *Kneeland*, 2017 WL 927781, at *10.

"Of course it is possible that the ALJ considered and rejected [Dr. Duncan's] opinions, [though] without any explanation, [the Court has] no way of knowing." *Id.* at *10. The mere possibility that the ALJ may have properly considered Dr. Duncan's findings does not make the failure to explain harmless. To show prejudice, Wilkerson is not required to establish unequivocally that the ALJ would have reached a different decision. *See Gullett v. Chater*, 973 F. Supp. 614, 621 (E.D. Tex. 1997). He need only establish that the ALJ might reach a contrary conclusion on remand.

This burden is met here. If the ALJ failed to consider Dr. Duncan's conclusions and now afforded them some weight, the ALJ might have reached a contrary conclusion. Dr. Duncan specifically found that Wilkerson "cannot sustain concentration and persist in work-related activity at a reasonable pace, ... maintain effective social interaction on a consistent and independent basis with supervisors, co-workers, and the public, or cope with normal pressures in a competitive work setting." Tr. at 48. These are traits that necessarily inform the ALJ's RFC determination. This, "in turn, would likely have affected the jobs available at step five of the sequential evaluation process." *Kneeland*, 2017 WL 927781, at *1.

The ALJ failed to explain how he weighed Dr. Duncan's conclusions concerning Wilkerson's work-related limitations and Wilkerson was harmed by that error.

III.   <u>Substantial evidence does not support the ALJ's RFC determination.</u>

Finally, Wilkerson appears to argue that the ALJ's RFC determination is "internally inconsistent" and therefore not supported by substantial evidence. Dkt. No. 16 at 25. The Court agrees.

The ALJ found that Wilkerson "has the residual functional capacity to sit up to six hours and stand up to six hours in an eight-hour day," among other capabilities. Tr. at 26. To reach this conclusion, the ALJ cited to examination notes indicating that Wilkerson's symptoms were fairly minimal. But he did not cite any medical opinions that support his conclusions on Wilkerson's ability to sit and stand during a work day. And each physician charged with making a determination about Wilkerson's ability to sit and stand disagreed with the ALJ's conclusions. Dr. Barroga, Wilkerson's treating physician, found that Wilkerson could only sit and stand for about one to two hours in an eight-hour work day. And Drs. Cremona and Ligon, to whom the ALJ otherwise purported to substantially defer, each found that Wilkerson could only sit and stand for four hours in an eight-hour work day.

The ALJ's apparent decision to disregard these physicians' findings requires the Court to conclude that his RFC determination is not substantially supported by the evidence. As a layperson, the ALJ is not permitted to "draw his own medical conclusions from some of the data, without relying on a medical expert's help." *Frank v. Barnhart*, 326 F.3d 618, 621-22 (5th Cir. 2003). "While the ALJ may choose to reject [a physician's] opinions, [he] cannot then independently decide the effects of Plaintiff's … impairments on [his] ability to perform work-related activities." *Nesbitt v. Colvin*,

17

No. 3:12-cv-98-BN, 2013 WL 5299271, at *5 (N.D. Tex. Sept. 20, 2013) (citing *Ripley*, 67 F.3d at 557-58).

This case may illustrate precisely why courts caution ALJs from "'succumb[ing] to the temptation to play doctor.'" *Frank*, 326 F.3d at 622 (quoting *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)). The ALJ selectively cited to unremarkable test results as evidence that Wilkerson's fibromyalgia did not prevent him from working. But fibromyalgia often lacks objective clinical findings. Accordingly, each of the physicians charged with making such a determination found that Wilkerson was more limited than the ALJ felt that the objective evidence suggests. After all, "'lay intuitions about medical phenomena are often wrong.'" *Id.* (quoting *Schmidt*, 914 F.2d at 118).

The Commissioner argues that the ALJ actually considered these findings and simply exercised his discretion to assign them no weight by ignoring them. This explanation would not cure the ALJ's error, even if credited.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. The ALJ is thus required to discuss a physician's contrary findings and to explain why he has disregarded those findings. *Kneeland*, 2017 WL 927781, at *8. This is particularly true where, as here, the ALJ claimed to have assigned substantial weight to Drs. Cremona and Ligon's respective opinions in one section of his analysis and then ignored their findings when they contradicted his conclusions. The ALJ "cannot 'pick and choose' only the evidence that supports his position." *Loza*, 219 F.3d at 383.

The ALJ's failure to consider these physicians' opinions on Wilkerson's ability to sit and stand during an eight-hour work day is material. The ALJ concluded that Wilkerson could work up to six-hours in an eight-hour day and only identified jobs that Wilkerson could perform based on that assumption. Accordingly, if the ALJ afforded any of these opinions some weight, he could conclude that Wilkerson is unable to work. This is especially apparent since the burden is on the Commissioner at Step 5 to identify gainful employment available in the national economy that the claimant is capable of performing. *See Myers v. Apfel*, 238 F.3d 617, 621-22 (5th Cir. 2001) (holding that remand was required when the ALJ failed to consider all evidence from a treating source and failed to present good cause for rejecting it); *Newton*, 238 F.3d at 621-22 (holding that remand was required when the ALJ failed to consider each of the Section 416.927(c) factors before declining to give weight to the opinions of the claimant's treating specialist).

The ALJ erred by disregarding relevant medical opinions when determining Wilkerson's RFC and Wilkerson was harmed by that error.

## Conclusion

The hearing decision is reversed and this case is remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

//

//

//

//

19

SO ORDERED.

DATED: March 23, 2017

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE